UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RYAN EDWARD THOMPSON,

      Defendant.

Case No. 23-cr-211 (JRT/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of Title 28 U.S.C. § 636, upon the parties' various Motions for the discovery and production of evidence, [Docket Nos. 20, 29, 30, 31], and upon Defendant Ryan Edward Thompson's ("Defendant") Motion to Suppress Statement. [Docket No. 32].

The Court held a Motions Hearing on August 4, 2023, regarding the parties' pretrial motions. Upon request, supplemental Memorandums regarding Defendant's Motion to Suppress Statement, [Docket No. 32], were then filed by Defendant, [Docket No. 40], and the Government, [Docket No. 41].

For the reasons discussed herein, the Government's Motion for Discovery, [Docket No. 20], is **GRANTED**. Defendant's Motion for Disclosure of 404(b) and 608(b) Evidence, [Docket No. 29], is **GRANTED** in part and **DENIED** in part. Defendant's Motion to Retain Rough Notes, [Docket No. 30], is **GRANTED**. Defendant's Motion for Discovery Pursuant to Federal Rule of Criminal Procedure 16(a), [Docket No. 31], is **GRANTED** in part and **DENIED** in part.

Further, it is recommended that Defendant's Motion to Suppress Statement, [Docket No. 32], be **DENIED**.

1

## I.    Background

Defendant is charged with two (2) counts of production and attempted production of child pornography in violation of Title 28 U.S.C. §§ 2251(a) and 2251(e). (Indictment [Docket No. 1]).

## II.    Government's Motion for Discovery. [Docket No. 20].

The Government seeks discovery pursuant to Rules 16(b), 12.1, 12.2, 12.3, and 26.2 of the Federal Rules of Criminal Procedure, as well as Rules 702, 703, and 705 of the Federal Rules of Evidence. (See Gov't's Mot. For Discovery [Docket No. 20]).

### A.  Inspection and Copying Pursuant to Rule 16(b)

#### 1. Documents and Tangible Objects

The Government requests that the Court order Defendant to permit inspection and copying of all books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

Defendant did not object to the request. The motion is **GRANTED**, and Defendant shall disclose any such responsive materials no later than fourteen (14) calendar days before trial.

#### 2. Reports of Examinations and Tests

The Government further requests all results and reports of physical or mental examinations and of scientific tests or experiments made in connection with the above-captioned matter, or copies thereof, within the possession or control of Defendant, which he intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial.

Defendant did not object to the request. The motion is **GRANTED**, and Defendant shall disclose any such responsive materials no later than fourteen (14) calendar days before trial.

### 3. Expert Testimony

The Government also seeks a written summary of expert testimony Defendant intends to use under Rules 702, 703, and 705 of the Federal Rules of Evidence as evidence at trial. The Government asserts that the summary must describe the opinions of the expert witnesses, the basis and reasons thereof, all publications authored by the witnesses in the past ten (10) years, a list of all cases that the expert witness has testified in the preceding four (4) years, and the witnesses' qualifications. The Government requests that such expert disclosures for both parties be made twenty-eight (28) days before trial, with rebuttal expert reports being produced no later than fourteen (14) days before trial.

Defendant did not object to this request. The motion is **GRANTED**, and the parties shall disclose the identity of any case-in-chief expert witness and make those expert disclosures required by Federal Rule of Criminal Procedure 16 no later than twenty-eight (28) calendar days before trial, and any rebuttal expert disclosures thereto which shall be disclosed no later than ten (10) days before trial.

### B.  Notice of Alibi Defense

Pursuant to Federal Rule of Criminal Procedure 12.1, the Government seeks an Order from the Court requiring Defendant, if he intends to claim an alibi as a defense, to state the specific place or places at which Defendant claims to have been at the time of the alleged offenses in the above-captioned matter and the names and addresses of the witnesses upon whom Defendant intends to rely on to establish such alibi.

Defendant did not object to this request. The motion is **GRANTED**, and Defendant shall give notice of same pursuant to Rule 12.1 as soon as practicable and in no event later than twenty-one (21) calendar days before trial.

### C. Notice of Insanity/Mental Illness Defense

In addition, pursuant to Federal Rule of Criminal Procedure 12.2, the Government requests the Court to order Defendant, if he intends to rely upon the defense of insanity or introduce expert testimony relating to a mental disease or defect or any other mental condition of Defendant relevant to the issue of guilt, to provide the Government notice of such defense.

Defendant did not object to this request. The motion is **GRANTED**, and Defendant shall give notice of same pursuant to Rule 12.2 as soon as practicable and in no event later than twenty-one (21) calendar days before trial.

### D. Notice of Public Authority

Pursuant to Federal Rule of Criminal Procedure 12.3, the Government seeks an order from the Court requiring Defendant, if he intends to rely upon the defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the offense, to notify the Government and the Court no later than the date of the first hearing on pretrial motions.

Defendant did not object to this request. The motion is **GRANTED**, and Defendant shall give notice of same pursuant to Federal Rule of Criminal Procedure 12.3 as soon as practicable and in no event later than twenty-one (21) calendar days before trial.

### E. Witness Statements

The Government seeks all statements within Defendant's possession or control of any witness that Defendant intends to call in connection with a suppression hearing, detention hearing, trial, or sentencing.

Defendant did not object to this request. The motion is **GRANTED**. To the extent Defendant has statements in his possession or control of any witness that he intends to call to testify in connection with a suppression hearing, detention hearing, trial, or sentencing, Defendant shall disclose such statements to the Government no later than three (3) calendar days before such witness is called to testify.

### III.    Defendant's Pretrial Motion for Disclosure of 404(b) and 608(b) Evidence. [Docket No. 29].

Defendant seeks disclosure of any "bad act" or "similar course of conduct" evidence that the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b) no later than twenty-eight (28) days before trial. (Def.'s Pretrial Mot. for Disclosure of 404(b) and 608(b) Evidence [Docket No. 29]). In addition, Defendant seeks the same for the disclosure of specific instances of Conduct under Rule 608(b). (Id.).

In its written response, the Government acknowledged its obligation to comply with Rule 404(b), and it represented that it would continue to comply with its obligations. (Gov.'s Consolidated Response to Defendant's Pretrial Mots. [Docket No. 33] at 3). The Government suggested that disclosures regarding Rule 404(b) evidence be made no later than two (2) weeks before trial. (Id.).

In relevant part, Rule 404(b)(3) provides that the Government must "provide reasonable notice of any" Rule 404(b) "evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). In that notice, the Government must also "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).

Federal Rule of Evidence 608(b) provides: "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness"; however, "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examines has testified about." Rule 608 does not contain any specific provision requiring pretrial notice of such evidence be given to a defendant. Defendant does not cite any authority that would require this Court to order the Government to provide notice or disclosure with respect to Rule 608(b). The Government is under no obligation to provide pretrial notice of impeachment material pursuant to Rule 608. See United States v. Shorter, No. 4-cr-517-2, 2004 WL 2496486, at *2 (N.D. Ill. Nov. 3, 2004).[1]

Defendant's Pretrial Motion for Disclosure of 404(b)and 608(b) Evidence, [Docket No. 26], is **GRANTED** in part and **DENIED** in part. The Government shall disclose to the Defense as soon as practicable, and in no event later than two (2) weeks before trial, formal notice of any specific 404(b) evidence it intends to offer, as well as the purpose for which it intends to offer it into evidence at trial.[2] With respect to any specific 608(b) evidence, the Court encourages any voluntary agreements made pertaining to such discovery.

## IV. Defendant's Pretrial Motion for Government Agents to Retain Agents' Rough Notes. [Docket No. 30].

---

[1] The Government has agreed to work with the defense to identify specific instances of conduct in the interests of judicial economy and efficiency at trial. (Gov.'s Consolidated Response to Defendant's Pretrial Mots. [Docket No. 33] at p. 2).

[2] Federal Rule of Evidence 404(b) does not extend to evidence of acts that are "intrinsic" to the charged offense. United States v. Adediran, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence); see United States v. Williams, 900 F.2d 823 (5th Cir. 1990).

Defendant requests an Order from the Court requiring any law enforcement agents, including confidential informants, to retain and preserve all rough notes taken as part of their investigations, whether or not the contents of such rough notes are incorporated in official records. (Def.'s Pretrial Mot. for Gov. Agents to Retain Agents' Rough Notes [Docket No. 30]).

The Government does not object to Defendant's request for the retention of rough notes. (Gov.'s Consolidated Response to Defendant's Pretrial Mots. [Docket No. 33] at pp. 3-4).

Defendant's motion is **GRANTED** regarding rough notes as to retention only at this time. If Defendant seeks production or disclosure of rough notes, he will need to bring a separate motion for such production.

## V.     Defendant's Motion for Discovery Pursuant to Fed. R. Crim. P. 16(a). [Docket No. 31].

Defendant requests from the Court an Order pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure to require the Government to disclose any written, recorded, or oral statements made by Defendant or copies thereof in the possession, custody, or control of the Government; the substance of any oral statements made by Defendant whether before or after arrest, which the Government intends to offer in evidence at the trial. (Def.'s Mot. for Discovery Pursuant to Fed. R. Crim. P. 16(a) [Docket No. 31]). Defendant also seeks a copy of his criminal record if such a record exists and is within the possession or control of the Government. (Id.).

Furthermore, Defendant also requests permission to inspect and/or copy books, papers, documents, photographs, and tangible objects in the possession, custody, or control of the Government that are material to the preparation of the defense or are intended for use by the Government as evidence in his case-in-chief at the trial or were obtained from or belonged to Defendant. (Id.). Defendant also requests all reports or documents related to any physical or mental

examination and of any scientific tests or experiments related to his Defense as well as a written summary of the testimony that the Government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence. (Id.).

The Government does not object to this motion insofar as it seeks items that fall within the ambit of Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 702, 703, and 705. In addition, the Government has agreed to comply with Rule 16(a)(1)(A)-(B), (D)-(E). The Government states they are not aware of any disclosures in this case that would fall within the ambit of Rule 16(a)(1)(F) or (G) or Federal Rules of Evidence 702, 703, and 705, but the Government agrees to promptly inform the Defendant if that should change. However, the Government objects to the motion insofar as it seeks items that fall outside the ambit of Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 702, 703, and 705.

It is well established that "[c]riminal defendants do not have a general constitutional right to discovery." United States v. Johnson, 228 F.3d 920, 924 (8th Cir. 2000) (citing Weatherford v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977)). "In most circumstances, then, a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." Id.

Here, the Federal Rule of Criminal Procedure requires the Government to disclose, among other things, relevant written or recorded statements or confessions made by Defendant; relevant results or reports of physical or mental examinations; and documents within the Government's possession, custody, or control that are material to preparing the defense, will be used by the Government in its case-in-chief, or documents obtained from or belonging to Defendant. See Fed. R. Crim. P. 16(a).

Accordingly, Defendant's Motion for Discovery Pursuant to Federal Rule of Criminal Procedure 16(a), [Docket No. 31], is **GRANTED** in part as to any subsequently acquired materials or information which are specifically responsive to Rule 16(a)(1)(A)-16(a)(1)(E), which shall be disclosed to the Defense as soon as said responsive materials are discovered by the Government and, in any event, by no later than fourteen (14) days before trial. As for expert testing under Rule 16(a)(1)(F) and testimony under Rule 16(a)(1)(G), Defendant must disclose the identity of any expert witness and make all expert disclosures to be used in his case-in-chief as required by Federal Rule of Criminal Procedure 16 no later than twenty-eight (28) calendar days before trial, and rebuttal expert disclosures, which shall be disclosed no later than ten (10) days before trial. Defendant's Motion for Discovery under Federal Rule of Criminal Procedure 16(a), [Docket No. 31], is **DENIED**, in part, to the extent it seeks discovery beyond that which is required by Rule 16.

## VI.   Defendant's Pretrial Motion to Suppress Search and Seizure. [Docket No. 32].

Defendant moves the Court for an Order suppressing any confessions or statements in the nature of confessions and any evidence derived from or discovered as a result of any confessions obtained from the defendant regarding his statement made on May 4, 2022. (Motion to Suppress Search and Seizure [Docket No. 32]). Defendant argues he was never given a <u>Miranda</u> warning, and his statements are therefore inadmissible.

### A.  Statement of Facts[3]

On December 4, 2020, law enforcement received a report from Defendant's daughter (a minor) that he sexually assaulted her. (Tr. 27). Defendant was interviewed by Red Lake law

---

[3] Throughout this Order and Report and Recommendation, the Court refers to the transcript of the August 4, 2023, Motions Hearing by the abbreviation "Tr." (Transcript [Docket No. 38]).

enforcement regarding the allegations shortly after the report was received. (Tr. 28). On May 4, 2022, two agents from the Federal Bureau of Investigation ("FBI"), Special Agents Kyle Gregory and Nicole Lopez, along with Alea Richardson of the Red Lake Police Department, came to Defendant's place of employment, an IGA grocery store, to interview him. (Tr. 8-9). Defendant was not previously informed that the interview would take place. (Tr. 24).

When law enforcement arrived at the grocery store, they immediately spoke to Defendant's manager and asked her to bring Defendant to the breakroom so that they could conduct an interview. (Tr. 10-11). The two FBI agents wore casual clothing with no FBI markings or weapons showing; however, it is unclear whether Red Lake Officer Richardson had a holstered weapon visible during the interview. (Tr. 9). The Defendant's manager found him and escorted him to the breakroom. (Tr. 25).

The breakroom at the IGA was a rectangular room with a table, chairs, refrigerator, and a countertop. (Tr. 11). The room had no windows and a single door, which remained closed but unlocked throughout the interview.[4] (Tr. 11, 32). When Defendant walked into the room, the agents introduced themselves as law enforcement and offered him a chair. (Tr. 12-13). Defendant sat down, and the Agents began to interview him, starting with some basic questions to "build rapport." (Tr. 13-14). The agents told Defendant that they believed he "might be a witness in some of [their] cases and [could] help [them] out." (Tr. 26). The agents asked Defendant questions about the investigations in which he was a suspect, as well as, questions regarding a parallel investigation regarding a different minor victim that, according to the Agents' testimony, was very similar to

---

[4] Two people (presumably co-workers at the IGA) came into the break room during the interview for a brief time before immediately exiting. (Tr. 32).

the case involving Defendant's daughter.[5] (Tr. 16-17). Defendant answered all the agent's questions without any objections. (Tr. 20). However, the agents also never read Defendant his Miranda rights.[6] (Tr. 19).

During the interview, the FBI noted that Defendant appeared "a little nervous" but otherwise calm. (Tr. 18). The agents conducting the interview were also calm and did not raise their voices or threaten Defendant. (Tr. 18-19). The interview lasted approximately one hour, and at its conclusion, Defendant was allowed to return to his work at the IGA. (Tr. 21-22)[7].

To that point, throughout the interview, Defendant never asked to leave, nor did he ever try to exit the room. (Tr. 20). Defendant was arrested some five months later, in October of 2022, by the Red Lake Police Department. (Id.).

### B. Standard of Review

It is well-established law that "the prosecution may not use statement, whether exculpatory or inculpatory, stemming from a custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966) (emphasis added). Specifically, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.

---

[5] The agents never told Defendant that he was free to leave or that he did not have to answer the agents' questions. (Tr. 19-20). The Agent's testified that the purpose of the FBI's interview was to elicit a confession from the Defendant. (Tr. 17).

[6] Miranda v. Arizona, 384 U.S. 436, 444 (1966).

[7] Before exiting the room, the agents and Defendant exchanged pleasantries, and Special Agent Gregory commented about how they hoped they had given Defendant a break during the busy lunch hour at the grocery store. (Tr. 22).

Significantly, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). A Miranda warning is only required when "a suspect is (1) interrogated (2) while in custody." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); see Thompson v. Keohane, 516 U.S. 99, 110 (1995) (holding "in custody" for Miranda requires factual and legal analysis); see also Pennsylvania v. Muniz, 496 U.S. 582, 600-01 (1990) (holding that a question is an interrogation if it is "reasonably likely to elicit" incriminating information). The ultimate inquiry for determining whether a suspect is "in custody" is an objective test based on the "totality of the circumstances." California v. Bechler, 463 U.S. 1121, 1125 (1983).

In Bechler, the Supreme Court gave some factors to consider when making an objective inquiry as to "custody" under the totality of the circumstances: (1) where the interrogation took place; (2) whether objective evidence of an arrest is present; (3) the length and substance of the law enforcement's question. Bechler, 463 U.S. at 1125. The Eighth Circuit has interpreted the custody requirements under Miranda, Bechler, and their progeny based on the suspect's objective beliefs. United States v. Cowan, 674 F.3d 947, 957 (8th Cir. 2012).

The central focus of the objective test is "not a matter of [the suspect's] own subjective belief, but turns on whether a reasonable person in [the suspect's] shoes would have felt free to end the interview." United States v. Ollie, 442 F.3d 1135, 1137 (8th Cir. 2006); Cowan, 674 F.3d at 957. "A suspect is in custody if a reasonable person in his position would not have felt free to terminate the interrogation and leave." Id. (citing United States v. Martinez, 462 F.3d 903, 909 (8th Cir. 2006)).

The Eighth Circuit has since further interpreted Bechler and its progeny and has provided

six (6) factors to consider as guideposts for evaluating whether a reasonable individual would have

believed they were "in custody" for the purposes of Miranda:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (quoting United States v. Griffin, 922

F.2d 1343, 1349 (8th Cir. 1990)).[8]

"The first three indicia are mitigating factors which, if present, mitigate against the

existence of custody at the time of questioning. Conversely, the last three indicia are aggravating

factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d

496, 500-01 (8th Cir. 2002). None of the six factors, however, is entirely dispositive; "[t]he

analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether

a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d

at 630-31 (quoting United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)). Because the

ultimate custody determination is based on the totality of the circumstances, a particularly strong

showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at

1347, 1349. The Eighth Circuit in Perrin clarified that "Griffin is simply a rubric for considering

---

[8] These factors encompass and expand upon the Supreme Court's factors in Bechler. Compare Id. with Bechler, 463 U.S. at 1125.

the ultimate issue, not a mandatory checklist." United States v. Perrin, 659 F.3d 718, 720 (8th Cir 2011). "There is no requirement that the Griffin analysis be followed ritualistically in every Miranda case." United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005)).

The key inquiry is whether there was a formal arrest or the restraining of a defendant's movement to the degree associated with a formal arrest. Stansbury v. California, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994). "In answering this question, we look at the totality of circumstances while keeping in mind that the determination is based 'on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Stansbury v. California, 511 U.S. at 322-23), cert. denied LeBrun v. United States, 543 U.S. 1145, 125 S. Ct. 1292, 161 L. Ed. 2d 105 (2005). The Court must examine "both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody." Axsom, 289 F.3d at 500 (internal quotation marks omitted).

The calculus of determining whether a suspect is in custody for Miranda purposes is more complex and nuanced than numerically tallying up the six Griffin factors. United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007). The determination is based on the totality of the circumstances guided by the six inquiries made under Griffin in conjunction with the factors under Bechler. The ultimate test is whether a reasonable person in the position of the suspect would have felt free to end the interview. United States v. Vinton, 631 F.3d 476, 481 (8th Cir. 2011).

### C.  Analysis

In the present case, there is no dispute that the questioning by law enforcement which occurred in the interview was an interrogation. Thus, the only issue that remains is whether a reasonable person in the position of the Defendant would believe they were then in custody. Applying the various factors to be considered to the circumstances of Defendant's May 4, 2022, interview at his place of employment, the totality of the circumstances does <u>not</u> support a conclusion that Defendant was subject to a custodial interrogation.

### a. Knowledge that the Encounter was Voluntary

<u>Griffin</u> self-identified the most "effective means" to determine custody is whether or not the individual was actually informed of a formal arrest. <u>Griffin</u>, 922 F.2d at 1346. Formal notice to a suspect they are free and not under arrest during the interrogation is a substantial factor in determining whether a suspect felt free to leave. <u>Id.</u> at 1350 (describing the importance of informing a suspect they are free and not under arrest). "Such a statement provides an individual with a clear understanding of his or her rights and generally removes any custodial trappings from the questioning." <u>Ollie</u>, 442 F.3d at 1138 (citing <u>Czichray</u>, 378 F.3d at 826). In making this determination, the Court places "significant emphasis" on whether "the defendant was told before his interview that he was not under arrest and that he was free to leave at any time." <u>United States v. Muhlenbruch</u>, 634 F.3d 987, 996-97 (8th Cir. 2011). However, any "'opposite inference'—that a suspect not being told he is free to leave during police questioning is a strong indication that he was in custody—does not necessarily follow because 'the touchstone of [the] inquiry remains whether [the suspect] was restrained as though he were under formal arrest.'" <u>United States v. Laurita</u>, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting <u>United States v. Lowen</u>, 647 F.3d 863, 868 (8th Cir. 2011).

In the present case, the FBI agents contacted Defendant at his workplace to ask questions with their subjective hopes of eliciting a confession. Although the officers did not expressly tell Defendant his participation in the interview was voluntary or that he was free to leave, nothing about the circumstances or the investigators' actions indicated otherwise. While an express advisement that Defendant was not under arrest and his participation was voluntary would have been the most obvious and effective means of demonstrating that a suspect was not in custody, the lack of such a statement is not dispositive of any opposite inference. Thus, the first factor is largely neutral as to whether the interview was custodial.

### b. Restraint on Freedom

The second factor, which addresses whether Defendant possessed freedom of movement during questioning, weighs in favor of finding Defendant was not in custody for the purposes of Miranda. The inquiry here is how it would have objectively appeared to a reasonable person in Defendant's position regarding whether his freedom of movement had been restrained "to the degree associated with formal arrest." United States v. Parker, 993 F.3d 595, 603 (8th Cir. 2021) (quoting United States v. Giboney, 863 F.3d 1022, 1028 (8th Cir. 2017)), cert. denied, 211 L. Ed. 2d 386, 142 S. Ct. 619 (2021). "A suspect will generally feel more able to end an interview when this mobility is unimpeded by the authorities." Ollie, 442 F.3d at 1138. The Court should take into consideration whether the restraint of freedom of movement is to "the degree associated with formal arrest." United States v. Williams, 760 F.3d 811, 815 (8th Cir. 2014). In Ollie, the suspect was taken to a "small interview room" where an officer sat alone with the suspect with the "door ajar." Ollie, 442 F.3d at 1138. The Eighth Circuit disagreed with the district court's conclusion that this factor negated custody since there was no evidence that the police restrained the suspect's freedom of movement. Id. Instead, the Eighth Circuit noted that "[s]uch a negative finding . . . is

16

qualitatively different from stating the [suspect] was free to move about. The record is silent on this issue because [the suspect] never tried to move about or leave the interview room." Id. When it is unclear whether a suspect attempted to move or leave an interview, it is impossible to determine if the suspect was restrained. See Id.; see also Sanchez, 676 F.3d at 631 (concluding that it was unclear whether the suspect's freedom of movement was restrained during the police interview because the suspect did not attempt to leave). However, in Laurita, the Eighth Circuit found that a suspect being questioned without physical or verbal restraint in a conference room at their workplace with the door unlocked did possess unrestrained freedom of movement during the interview. Laurita, 821 F.3d at 1025. This was because a reasonable person in the suspect's position would have felt free to end the questioning and leave. Id.

On the record now before the Court, there is no indication that a reasonable person in the Defendant's position would have felt impeded in their ability to leave the room. In fact, the present case is very similar to Laurita—the Defendant's movement was not significantly constrained to the degree associated with formal arrest. Before, during, and after the interview, the Defendant was not handcuffed, physically or verbally restrained, or otherwise confined. Cf. Cowan, 674 F.3d at 957 (concluding where a suspect "was detained, handcuffed, and patted down while [a detective] questioned him[,]" the suspect was in custody "because a reasonable person in [his] position would not have felt free to end the questioning and leave"). In addition, Defendant never asked to leave the room during the course of the interview and always had a path to a door that was not locked. The location of the interview in the employee breakroom of the IGA is analogous to the interview in the conference room in Laurita, 821 F.3d at 1025.[9] A reasonable person in the Defendant's

---

[9] The open nature of the IGA breakroom during Defendant's interview is demonstrated by the fact that at least two other people were not prevented from entering and leaving the breakroom during the interview. (Tr. 32).

position would not have believed they were constrained inside the IGA breakroom to the degree associated with a formal arrest by the agents. Thus, the second factor weighs against a finding of custody.

### c. Initiated Contact/Voluntary Acquiescence

This factor generally weighs against finding a defendant was in custody when a suspect voluntarily acquiesces to police questioning. United States v. Lussier, No. 19-cr-0087 (WMW/LIB), 2019 U.S. Dist. LEXIS 138348, 2019 WL 3847296, at *10 (D. Minn. July 2, 2019) (citing Axsom, 289 F.3d at 501). In general, a suspect acquiesces to questioning by, in fact, answering questions. See United States v. Merrell, 88 F. Supp. 3d 1017, 1026 (D. Minn. 2015), aff'd, 842 F.3d 577 (8th Cir. 2016). However, Courts have noted that a suspect's compliance may stem from a reasonable perception that they have no choice but to answer law enforcement's questions. See Sanchez, 676 F.3d at 631.

The Agents here initiated contact with the Defendant through his store manager in a public place that remained open to other employees. However, the Defendant then voluntarily agreed to speak to the agents in the interview. The demeanor of the Defendant was described as calm and conversational. See in accord, Axsom, 289 F.3d at 501-02 (determining that because the suspect "was extremely friendly and cooperative during the interview" and "offered to show agents which of his two computers contained child pornography," the suspect had voluntarily acquiesced to questioning). This factor mitigates against a finding that Defendant was in Custody. See Lussier, No. 19-cr-0087 (WMW/LIB), 2019 U.S. Dist. LEXIS 138348, 2019 WL 3847296, at *10 (concluding that the third factor weighs against a finding of custody when, after law enforcement initiated contact in the driveway of the defendant's grandfather's residence, the defendant continued to talk to law enforcement).

### d. Strong Arm or Deceptive Tactics

The fourth factor, addressing whether law enforcement used strong arm tactics or deceptive stratagems against a suspect during the questioning, does not aggravate in favor of finding that Defendant was in custody. The Eighth Circuit has noted that purportedly coercive aspects "are largely irrelevant to the custody determination." LeBrun, 363 F.3d at 721; see also Laurita, 821 F.3d at 1026 ("[D]eception [by law enforcement] is irrelevant unless it relates to a reasonable person's perception of his freedom to depart."). The Supreme Court has clarified that "a noncustodial situation is not converted into one which Miranda applies simply because . . . the questioning took place in a coercive environment." Mathiason, 429 U.S. at 495. Furthermore, an officer's false statement to the suspect regarding evidence against the defendant has "nothing to do with whether [a suspect] was in custody for purposes of the Miranda rule." Id. at 496.

The Court does not find that law enforcement used strong arm or unduly coercive tactics when interviewing the Defendant here. The tone of the interview was described as calm, and there is no evidence that the officers used anything resembling the "strong arm tactics" contemplated by Griffin, 922 F.2d at 1351. While it is true that law enforcement did not explain to the Defendant upfront that he was a suspect, and their subjective goal in the interview was to elicit a confession, the Eighth Circuit does not require law enforcement to notify suspects of their strategies. The Court in Ollie made it clear that even when a law enforcement officer's questions are designed to elicit a confession, that is not the kind of deceit which would "prevent a reasonable person from terminating the interview" or prevent the person from leaving or asking the agents to leave. Ollie, 442 F. 3d at 1139. Instead, the analysis concerning the existence of a custodial interview is only related to the restraint imposed by the agents. Axsom, 289 F.3d at 503. Thus, the Court finds no tactics by law enforcement in the present case that would weigh towards custody.

### e. Police Dominated Atmosphere

The fifth <u>Griffin</u> factor requires a determination of whether the "atmosphere of the questioning was police dominated." In determining whether an interview was police dominated, the "entire context of the questioning, including such considerations as place and length of the interrogation" must be considered. <u>Griffin</u>, 922 F.2d at 1352. In <u>Ollie</u>, the suspect was questioned in a small conference room at the police station, with only one officer present. The Court found that "the interview took place in a police-dominated atmosphere and that this atmosphere would have restrained a reasonable person's movements." <u>Ollie</u>, 442 F.3d at 1139. The Court reasoned that "[i]nterviews taking place on the police officers' 'home turf' are more likely to be police-dominated." <u>Id.</u> For example, a room normally used by the United States Attorney's Office in the basement of a courthouse is a location that has been determined to be neither the "home turf" of the suspect nor of the police. <u>See</u> <u>Sanchez</u>, 676 F.3d at 632. In such circumstances, the factor appears to be less determinative. <u>Id.</u> The test, under <u>Griffin</u>, only pertains to whether <u>law enforcement</u> is in a space that it controls so that it resembles formal arrest. <u>Id.</u>

The interview in this case, which lasted for only approximately one hour and involved two federal agents and one local law enforcement officer, was not a police-dominated atmosphere that resembled a formal arrest.[10] <u>See, e.g.</u>, <u>Miranda</u>, 384 U.S. at 469; <u>see also</u>, <u>United States v. Makes</u>

---

[10] The length of an interview, along with the location and officer's demeanor all contribute to the atmosphere and can influence whether a reasonable person would believe they were free to leave. <u>See</u> <u>Axsom</u>, 289 F.3d at 502 (concluding the district court erred in finding an interview was police dominated because, although nine federal agents were present in the suspect's home where the interview took place, "only two agents conducted the interview[,]" "[c]ommunication between the agents and [the suspect] consisted of two-way questioning," and photographs of the scene "reflect[ed] a more casual scene than a police dominated, inherently coercive interrogation"); <u>Czichray</u>, 378 F.3d at 825, 830 (ruling a "nearly seven[-]hour[]" interview where agents arrived at the suspect's home at 6:30 a.m., demanded he answer the door, instructed the suspect to call in sick to work, and told the suspect they would "'light up his world'" if he did not cooperate was not custodial).

Room, 49 F.3d 410, 415 (8th Cir. 1995) (noting that interrogation lasting more than two hours was not coercive in duration); United States v. Parker, 993 F.3d 595, 603 (8th Cir. 2021).

Notably, under circumstances materially analogous to the present case, the Eighth Circuit Court of Appeals has determined that a room where staff may come and go from the room cannot "be fairly described as 'police dominated[.]'" United States v. New, 491 F.3d 369, 373 (8th Cir. 2007). Other Courts in this District have reached this same conclusion. See, e.g., United States v. Mattox, No. 18-cr-263 (DWF/ECW), 2019 WL 2343697, at *6 (D. Minn. Apr. 3, 2019); see also United States v. Alvarez, No. 4:10-cr-00047-JAJ, 2011 WL 13199206, at *1 (S.D. Iowa May 10, 2011).

Moreover, Special Agents Gregory and Lopez, along with Officer Richardson, were visitors to the IGA and never "took control of the site and the persons present there." United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993). The breakroom at the IGA, while containing three law enforcement officers, was not police-dominated as interpreted by the Eighth Circuit and did not last for a period of time that would suggest that Defendant was not free to leave. Indeed, other non-police individuals entered and left the IGA breakroom during the interview at issue here. Thus, this factor weighs against custody.

### f. Arrest at the End of the Encounter

The final factor is whether the suspect was placed under arrest at the termination of the questioning. If such an arrest did occur, the factor weighs towards a finding that Defendant was in custody, but if no arrest occurs at the termination of questioning, the factor weighs against such a finding. See Lussier, No. 19-cr-0087 (WMW/LIB), 2019 U.S. Dist. LEXIS 138348, 2019 WL 3847296, at *13.

At the conclusion of the interview, Defendant was not arrested. The defendant was free to return to his work at the IGA, and he did so. This factor also weighs against a finding of custody. United States v. Diaz, 736 F.3d 1143, 1149 (8th Cir. 2013) (highlighting that, rather than arresting a suspect at the conclusion of questioning, officers "instead thanked [the suspect], encouraged him to continue his cooperation, and 'wished [him] a good trip'").

Thus, given the totality of the circumstances guided by the Griffin factors, the Court finds the Defendant's interview in the present case was not custodial in nature. The Court comes to this conclusion not by formulaically tallying but instead by considering each factor along with the totality of the circumstances surrounding the interview. The Court finds that a reasonable person, in the Defendant's position, would have felt free to end the interview. The interview, which took place in the IGA breakroom on May 4, 2023, was not a custodial interview under Miranda. Therefore, law enforcement was not required to issue a warning to the Defendant before the interview started.

### g. Defendant's Argument that Law Enforcement Deliberately Circumvented Miranda

In the Defendant's Memorandum in Support of Motion to Suppress, [Docket No. 40], Defendant asserts that if law enforcement creates a deliberate strategy to circumvent the requirements of Miranda, then such statements should be inadmissible. Defendant cites Missouri v. Seibert, 542 U.S. 600, 604 (2004) and United States v. Briones, 390 F.3d 610, 613 (8th Cir. 2004).

The Court finds that the interrogation process employed by law enforcement here was not a deliberate strategy to circumvent the requirements of Miranda because, as explained above, the

interrogation was <u>not</u> custodial.  There is no evidence that law enforcement tried to circumvent the <u>Miranda</u> requirements for a <u>custodial</u> interrogation. The record before the Court indicates that the Defendant's interview was <u>non-custodial</u> and thus did not require a warning under <u>Miranda</u>.

Furthermore, the cases presented by Defendant do not support his assertion that there is a subjective test regarding the intentions of law enforcement. In <u>Seibert</u>, the defendant was arrested and then interviewed without receiving <u>Miranda</u> warnings. After confessing, the police then gave a <u>Miranda</u> warning and then elicited the confession for a second time. <u>Seibert</u>, 542 U.S. at 605. The Court determined that the warnings that the defendant received served no purpose because the arrestee had already confessed during the preceding unwarned custodial interrogation. <u>Id.</u> at 616-17. In <u>Briones</u>, the defendant was arrested after a traffic stop led to the discovery of methamphetamine in his vehicle. <u>Briones</u>, 390 F.3d at 611. The defendant in <u>Briones</u> then spontaneously confessed to the possession of the drugs, and he was then escorted to a detention center by an officer. <u>Id.</u> While being escorted, the officer asked the defendant questions regarding the prior drug history of the defendant without providing <u>Miranda</u> warnings. <u>Id.</u> at 612. These statements were held to be inadmissible since the defendant was in custody during the interrogation.

Because Defendant in the present case was <u>not</u> in custody during his May 4, 2022, interview, there was <u>no</u> requirement for law enforcement to provide him with warnings under <u>Miranda</u>.

Accordingly, the undersigned recommends that Defendant's Motion to Suppress Statement, [Docket No. 32], be **DENIED** regarding the statements that he made during his encounter with law enforcement officers at his place of employment on May 4, 2022.

## VII.    Conclusion

Thus, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Government's Motion for Discovery, [Docket No. 20], is **GRANTED**, as set forth above;

2. Defendant's Motion for Disclosure of 404(b) and 608(b) Evidence, [Docket No. 29], is **GRANTED** in part and **DENIED** in part, as set forth above;

3. Defendant's Motion to Retain Agents Notes, [Docket No. 30], is **GRANTED**, as set forth above;

4. Defendant's Motion for Discovery Pursuant to Federal Rule of Criminal Procedure 16(a), [Docket No. 31], is **GRANTED** in part and **DENIED** in part, as set forth above;

Further, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion to Suppress Statement, [Docket No. 32], be **DENIED**.

Dated: October 13, 2023                          s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being

served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.