**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UNITED STATES OF AMERICA,

                                    Criminal No. 23-211 (JRT/LIB)

                    Plaintiff,

v.

                                    **MEMORANDUM OPINION AND ORDER**
RYAN EDWARD THOMPSON,                **ADOPTING REPORT AND**
                                     **RECOMMENDATION AND DENYING**
                    Defendant.        **MOTION TO SUPPRESS**

---

Mary Riverso, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Plaintiff.

Aaron J. Morrison and Daniel P. Huddleston, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant.

Defendant Ryan Thompson moves to suppress his statement to law enforcement, arguing that the statement was obtained in violation of his rights under *Miranda v. Arizona*. 384 U.S. 436 (1966). Magistrate Judge Leo I. Brisbois issued a Report and Recommendation ("R&R") recommending that Thompson's motion to suppress be denied. Under the totality of the circumstances, the Magistrate Judge concluded that Thompson was not in custody, so law enforcement was not required to issue a *Miranda* warning before the interview. In addition, the Magistrate Judge found that law enforcement did not deliberately attempt to circumvent the requirements of *Miranda*. Because Thompson's objections to the R&R are not specific, the Court reviews for clear

error and concludes that the Magistrate Judge's reasoning was not clearly erroneous. Therefore, the Court will overrule Thompson's objections, adopt the R&R, and deny Thompson's motion to suppress.

## BACKGROUND

### I.    FACTS

The R&R provides a comprehensive factual background, unobjected to by either party, which the Court will adopt in full.  (*See* Order & R. & R. ("R. & R.") at 9–11, Oct. 13, 2023, Docket No. 43.)  The Court will not restate the entire background but instead briefly summarize.

In December 2020, Thompson's daughter, a minor, reported to law enforcement that Thompson sexually assaulted her.  (Tr. of Mots. Hearing ("Tr."), at 27, Aug. 4, 2023, Docket No. 38.)  Shortly thereafter, Red Lake law enforcement interviewed Thompson about the allegations.  (*Id.* at 28.)

Then, on May 4, 2022, two FBI agents and a Red Lake law enforcement officer went to Thompson's workplace, a grocery store, to interview him about the allegations.  (*Id.* at 8–9.)  The agents' stated goal was to elicit a confession of criminal sexual conduct.  (*Id.* at 30, 34.)  The two FBI agents were not in uniform; they wore casual clothing and had no weapons showing.  (*Id.* at 9.)  It is unclear whether the Red Lake officer had visible weapons on her person.  (*Id.*)  Upon arriving at the grocery store, the agents requested that Thompson's manager bring Thompson to the breakroom for an interview.  (*Id.* at 10–11.)  The manager complied.  (*Id.* at 25.)

-2-

The breakroom in the grocery store is rectangular, with a table, chairs, refrigerator, and countertop—and enough space to comfortably sit four or more people. (*Id.* at 11.) The breakroom has no windows and only one door, which was closed but unlocked during the interview. (*Id.* at 11–12, 32.)

The agents introduced themselves as law enforcement and told Thompson that he could have a seat. (*Id.* at 12–13.) Thompson sat down, and the agents told him that they believed that he may be a witness in some of their cases and that he could "help [them] out." (*Id.* at 25–26.) The agents did not read Thompson a *Miranda* warning and instead began the interview with some background questions to build rapport with him. (*Id.* at 13–14, 19.) Later, the agents told Thompson that he may be looking at charges regarding the accusations against him and asked specific questions about the investigations in which he was a suspect. (*Id.* at 16–17.)

Throughout the interview, Thompson calmly answered the agents' questions without objections and without asking for a break. (*Id.* at 18–19.) Two people, presumably other employees, briefly entered the breakroom during the interview before immediately exiting. (*Id.* at 21.) The interview lasted about one hour. (*Id.* at 21–22.) Thompson was arrested approximately five months later. (*Id.* at 22.)

## II.    PROCEDURAL HISTORY

Thompson was indicted over one year after the interview for production and attempted production of child pornography in violation of 28 U.S.C. §§ 2251(a) and 2251(e). (Indictment, May 31, 2023, Docket No. 1.) The charges stem from the

investigation that opened in December of 2020 based on Thompson's daughter's report to law enforcement. (Tr. at 8–9.)

Thompson moved to suppress any confessions or statements in the nature of confessions and any evidence derived from or discovered because of any confession from his statement to law enforcement on May 4, 2022. (Mot. Suppress, July 13, 2023, Docket No. 32.) Thompson argues that his statement is inadmissible because he was not given a *Miranda* warning before the interview. (*Id.* at 2.)

The Magistrate Judge heard arguments on Thompson's motion to suppress. (*See generally* Tr.) Upon request, the parties filed supplemental memoranda. (Def.'s Mem. Supp. Mot. Suppress, Sept. 5, 2023, Docket No. 40; Government's Mem. Opp'n Mot. Suppress, Sept. 19, 2023, Docket No. 41.)

The Magistrate Judge issued an Order and Report and Recommendation recommending that Thompson's motion to suppress be denied. (R. & R. at 23.) Thompson objects generally to the R&R, relying only on his previously submitted motion to suppress and his supplemental memorandum as his objections. (Def.'s Objs. to R. & R., Oct. 27, 2023, Docket No. 44.) The United States opposes Thompson's objections. (Government's Opp'n to Def.'s Obj., Nov. 9, 2023, Docket No. 46.)

## DISCUSSION

### I.   STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2);

*accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

The Court emphasizes that only specific objections to the R&R constitute "proper" objections entitled to de novo review.  *Mayer*, 2008 WL 4527774, at *2.  Here, Thompson casually referenced his previous filings instead of stating specific objections to portions of the R&R.  Accordingly, the appropriate standard of review is for clear error.  *See Montgomery*, 98 F. Supp. 3d at 1017.

## II.   ANALYSIS

Thompson generally makes two arguments: (1) that his statement must be suppressed because he was in custody and did not receive a *Miranda* warning before the interview; and (2) that law enforcement's interrogation process was a deliberate strategy to circumvent *Miranda*'s requirements.  Neither is availing, particularly under clear error review.

**A.    In Custody Under *Miranda***

Incriminating statements may be excluded under the Fifth Amendment if they are the result of a custodial interrogation conducted without the proper *Miranda* warning. 384 U.S. at 479.   To suppress, the statement must be made when the suspect is both in custody and under a form of interrogation.  *Id.* at 498–99.  An individual is "in custody" when his freedom "is restricted to a degree akin to formal arrest."  *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009) (citation omitted).  The Eighth Circuit instructs courts to consider six non-dispositive factors when determining whether an individual is in custody for *Miranda* purposes:

> (1) whether the suspect was informed that he or she was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Id.* (citing *United States v. Griffin*, 922 F.3d 1343, 1349 (8th Cir. 1990)).  Ultimately, the test is whether, under the totality of the circumstances, a reasonable person similarly situated would have felt free to leave the interrogation.  *Id.*

After comprehensively analyzing all six of these factors, the Magistrate Judge concluded that, under all the circumstances in this case, Thompson was not subject to custodial interrogation during the May 4, 2022 interview because he was not "in

custody."[1]  (R. & R. at 15.)  In particular, the Magistrate Judge found that the second

through sixth factors weighed in favor of finding that Thompson was not in custody during

the interview.[2]

First, the Magistrate Judge's finding that Thompson had freedom of movement

during the interview is not clearly erroneous.  (R. & R. at 16–18.)  Thompson was not

handcuffed, physically or verbally restrained, or otherwise confined before, during, or

after the interview.   Plus, although the one door in the breakroom was closed during the

interview, it was not locked, and Thompson never asked to leave anyway.   Concluding

that the circumstances of this case are analogous to those in *United States v. Laurita*,

where the Eighth Circuit found that a reasonable person would have felt free to leave the

interview, the Magistrate Judge appropriately determined that Thompson's freedom of

movement was not constrained to the extent associated with formal arrest.   821 F.3d

1020, 1024–25 (8th Cir. 2016).

---

[1] It is undisputed that the May 4, 2022 interview constitutes an "interrogation" for *Miranda* purposes.  (*See* R. & R. at 15.)

[2] As for the first factor—whether Thompson was informed that he was free to leave or that his participation was voluntary—the Magistrate Judge did not err in concluding that this factor was "largely neutral."  (R. & R. at 15–16.)  On the one hand, the agents did not expressly tell Thompson that he was free to leave or that his participation in the interview was voluntary. But on the other hand, nothing about the circumstances suggested otherwise, and Eighth Circuit dicta indicates that a suspect not being told that he is free to leave or voluntarily participate does not necessarily mean that he was in custody.  *See United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016).  Indeed, the "touchstone" is whether he "was restrained as though he were under formal arrest."  *Id.* (citation omitted).  Because it is supported by the record and applicable law, the Court finds no clear error in this finding.

-7-

Second, the Magistrate Judge did not err in holding that Thompson voluntarily participated in the interview. (R. & R. at 18.) The Eighth Circuit instructs that when a suspect voluntarily participates in an interview, this factor generally weighs against finding that the suspect was in custody for *Miranda* purposes. *See United States v. Axsom*, 289 F.3d 496, 501–02 (8th Cir. 2002) (finding that suspect who was friendly and cooperative during interview voluntarily acquiesced to the interview). Here, it is true that the agents, not Thompson, initiated contact by showing up at Thompson's workplace to conduct the interview. However, in the end Thompson voluntarily participated in the interview, and he did so in a calm and conversational manner. Therefore, the R&R's conclusion that this factor mitigates against finding that Thompson was in custody is supported by the record and applicable law.

Third, the Magistrate Judge's determination that the agents did not employ strong-arm or unduly coercive tactics is not clearly erroneous. (R. & R. at 19.) As the Magistrate Judge correctly identified, the Eighth Circuit has found that using purportedly coercive tactics such as conducting the interview "in a small, windowless room," admitting to using "deceptive interview tactics," designing the interview "to produce incriminating responses," or "falsely trump[ing] up the evidence they said they possessed" does not necessarily indicate that a suspect is in custody. *United States v. LeBrun*, 363 F.3d 715, 720–21 (8th Cir. 2004). In fact, "some degree of coercion is part and parcel of the interrogation process," so "coercive aspects of a police interview are largely irrelevant to

the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart." *Id.* at 721.  Here, the agents did employ some degree of coercion—they did not explain up front that Thompson was a suspect in the investigation, and their stated goal was to elicit a confession to criminal sexual conduct.  However, the Magistrate Judge concluded that these facts do not rise to the level of impermissible coercive tactics contemplated by the Eighth Circuit.[3]  Therefore, it was not clearly erroneous to determine that Thompson was not subject to strong-arm or unduly coercive tactics under which a reasonable person would not have felt free to leave.

Fourth, the Magistrate Judge did not clearly err in finding that Thompson's interview at his workplace with only three members of law enforcement was not a police-dominated atmosphere.  (R. & R. at 20–21.)  In considering this factor, the Eighth Circuit instructs courts to weigh circumstances such as the place and length of the interrogation in the analysis.  *Griffin*, 922 F.3d at 1352.  Here, the one-hour interview occurred in a public area of Thompson's workplace (that is, the breakroom).   Plus, non-police individuals could—and did—enter and exit during the interview.  *See United States v.*

---

[3] *See, e.g.*, *United States v. Ollie*, 442 F.3d 1135, 1138–39 (8th Cir. 2006) (determining that an agent's asking the suspect if his story would change if his fingerprints were found on the gun does not affect the custody determination); *United States v. Sanchez*, 676 F.3d 627, 631 (8th Cir. 2012) (concluding that an agent's "raised voice and his assertions that [the suspect] was lying were not coercive interview methods"); *see also United States v. Czichray*, 378 F.3d 822, 825, 830 (8th Cir. 2004) (finding that investigator's informing the suspect of the potential consequences of a criminal investigation was not a threat indicating that the suspect was in custody).

*New*, 491 F.3d 369, 374 (8th Cir. 2007) (finding that interview that took place in private hospital room where nursing staff came and went was not police-dominated).  Thus, the Magistrate Judge did not err in determining that the circumstances of Thompson's interview were not police-dominated.[4]

Lastly, the conclusion that the sixth factor—whether there was an arrest at the end of the interview—weighs against finding that Thompson was in custody is clearly not erroneous.  (R. & R. at 21–22.)  No arrest occurred immediately after the May 4, 2022 interview.  Thompson was not arrested until six months later, in October 2022.

In sum, The Magistrate Judge's conclusion that, under the totality of the circumstances, Thompson was not in custody and therefore no *Miranda* warning was needed is fully supported by both the record and applicable legal principles.

### B.    Whether Law Enforcement Employed a Deliberate Strategy to Circumvent *Miranda*'s Requirements

Thompson argues that, even if the Court determines he was not subject to custodial interrogation, his statement must still be suppressed because the agents deliberately strategized to circumvent *Miranda*'s requirements.  Specifically, Thompson takes issue with the agents' decisions to meet Thompson at his workplace, use his manager to start the meeting, exercise rapport-building techniques, and represent that

---

[4] *See also Laurita*, 821 F.3d at 1026–27 (determining that 20-minute interview at suspect's workplace with one federal agent and one federal computer scientist was not police-dominated atmosphere); *United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995) (concluding that an interrogation that lasted two and a half hours was not coercive in duration).

Thompson was merely a witness that may be able to help them in their investigations. Thompson cites to *Missouri v. Seibert* and *United States v. Briones* in support.  542 U.S. 600 (2004); 390 F.3d 610 (8th Cir. 2004).  Those cases are inapposite.

The Magistrate Judge's conclusion that there is no evidence that the agents tried to sidestep *Miranda*'s requirements for a custodial interrogation is not clearly erroneous. As discussed, Thompson was not in custody for *Miranda* purposes.  Thus, the agents were not required to issue a *Miranda* warning before the interview.  As the Magistrate Judge determined, the cases Thompson cites, in which the suspect was in custody, are irrelevant.  (R. & R. at 22–23.)  The Court finds such reasoning appropriate, and certainly not clearly erroneous.

## CONCLUSION

Reviewing Thompson's objections and the Magistrate Judge's reasoning for clear error, the Court finds that the R&R is not clearly erroneous.  Instead, the R&R's conclusions are supported both by the record and applicable legal principles.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections to the Report and Recommendation [Docket No. 44] are **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 43] is **ADOPTED**; and

3.  Defendant's Motion to Suppress Statement [Docket No. 32] is **DENIED**.

DATED:  December 18, 2023                         _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                    United States District Judge